265 P.2d 435

**ARIZONA PUBLIC SERVICE CO.**

v.

**SOUTHERN UNION GAS CO. et al.**

No. 5561.

Supreme Court of Arizona.

Jan. 11, 1954.

Snell & Wilmer, by Edward Jacobson, Perry M. Ling and Mark Wilmer, Mc-Daniel & Franks, and Nicholas H. Powell, Phoenix, for appellants.

Evans, Hull, Kitchel & Jenckes, by Norman S. Hull and John E. Madden, Phoenix, Favour & Quail, Prescott, W. E. Ferguson, Holbrook, C. B. Wilson, Flagstaff (Willis L. Lea, Jr., Dallas, Tex., of counsel), for appellee Southern Union Gas Co.

H. J. Wolfinger, Prescott, for appellee City of Prescott.

John P. Clark, City Atty., Winslow (Dennis J. Sweeney, Winslow, of counsel), for appellee City of Winslow.

Urban R. Miller, Town Atty., Williams, for appellee Town of Williams.

Orrin C. Compton, City Atty., Flagstaff, for appellee City of Flagstaff.

WINDES, Justice.

Northern Arizona Light and Power Company, an Arizona public service corporation, hereinafter designated Northern, C. Earl Rogers and four other individual residents, citizens, and taxpayers of the city of Prescott, Arizona, hereinafter referred to as individual plaintiffs, filed an action against Southern Union Gas Company, a Delaware corporation, herein designated Southern, and the city of Prescott, seeking injunctive relief and a judgment declaring that a franchise issued by the city of Prescott and a certificate of convenience and necessity issued by the Arizona Corporation Commission to Southern authorizing it to distribute natural gas are void. The city of Winslow, the city of Flagstaff, and the town of Williams upon application were allowed to intervene. They will be referred to as intervenors. Arizona Public Service Company, an Arizona public service corporation and successor in interest to the Northern Arizona Light and Power Company, has been substituted as appellant herein. The cause was tried before the court without a jury. After the trial, and judgment dismissing plaintiffs' complaint against defendants and in favor of intervenors, Northern and the individual plaintiffs appeal.

The essential facts controlling the rights of the parties cannot be disputed and are substantially as follows: In October, 1902, the city of Prescott granted the Arizona Power Company, an Arizona corporation, a 50-year franchise for the distribution to its citizens of manufactured gas. In 1948 this franchise holder requested from Prescott an extension thereof to authorize the distribution of natural gas. Pursuant to a municipal election this request was rejected. In 1949, Northern acquired the franchise

rights of Arizona Power Company, as well as its certificate of convenience and necessity theretofore issued by the Arizona Corporation Commission, to distribute manufactured gas in Prescott.

Southern qualified as a foreign corporation to do business in Arizona on July 14, 1948. Theretofore in June of that year, it had appeared before the municipal officers and made application to Prescott, Williams, Winslow, Holbrook, Flagstaff, and the counties of Yavapai, Coconino and Navajo for the necessary franchises to enable it to engage in the distribution of natural gas in these communities. Subsequent to Southern's qualifying to do business as a foreign corporation, special elections were held in the municipalities involved pursuant to the provisions of section 16–1002, A.C.A.1939, and the franchises were authorized and were duly issued by the respective municipalities.

On July 15, 1948, the day after qualifying as a foreign corporation, Southern filed with the Arizona Corporation Commission an application for a certificate of convenience and necessity for the transportation, distribution, and sale of natural gas as a public utility in Mohave, Yavapai, Coconino and Navajo counties. Arizona Power Company, predecessor in interest of Northern, appeared before the commission and opposed Southern's application and sought for itself a certificate of convenience and necessity to the same effect. The commission after hearing denied the request of the Arizona Power Company and on September 28, 1948, entered its order reciting that each applicant was seeking a certificate of convenience and necessity; that Arizona Power Company had no franchise from Prescott and that Southern's application for such was pending; that Southern was well qualified to render natural gas service in the municipality as soon as the supply was available from San Juan Pipeline Company; that Southern would meet the requirements of the statutes and the commission when it obtained and submitted a franchise from the city of Prescott and that in the event Southern was granted such franchise the certificate should issue to it. The commission then ordered that it would issue the certificate to Southern upon presentation of evidence satisfactory to the commission that Southern had the municipal franchise from Prescott.

Subsequent to the foregoing order, the election was held in Prescott and its franchise was granted Southern on December 13, 1948. Thereafter on December 22, 1948, the commission ordered the issuance to Southern of its certificate of convenience and necessity reciting in said order that it had received satisfactory evidence of the granting to Southern by Prescott of a municipal natural-gas franchise.

There are submitted to us 21 assignments of error, and we shall not consider them individually but will consider the important and controlling principles of law involved. The two principal legal bases offered to sup-

port plaintiffs' position that the judgment for defendants is unwarranted are (1) that Southern had no valid franchise from the city of Prescott or the county of Yavapai, for the reason that at the time Southern made application therefor it was then a foreign corporation not qualified to do business in the state of Arizona; and (2) that Southern was disqualified under the provision of section 69–262, A.C.A.1939, to engage in the public utility business in Arizona, and the franchises and the certificate of convenience and necessity are therefore null and void. These propositions clash head-on with the plea of Southern that such matters were or should have been decided or presumably were decided by the corporation commission at the time it heard the applications of Southern and Arizona Power Company for their respective certificates of convenience and necessity and Arizona Power Company's opposition to the granting of Southern's application, and no request for a rehearing having been made and in the event the same were denied the statutory remedy pursued, the same is res judicata.

Our statutes on the subject under consideration expressly provide in substance that when the commission has made a decision, any interested party or the attorney general on behalf of this state may apply for a rehearing, section 69–248, A.C.A.1939; that in the event rehearing be denied, the dissatisfied party or the attorney general on behalf of the state may bring an action in the superior court against the commission;

that except by this form of action, no court of this state shall have jurisdiction to enjoin or review the commission's decision, section 69–249, A.C.A.1939; and that in all collateral actions the decision of the commission shall be conclusive. Section 69–247, A.C.A.1939.

We have held that the corporation commission in rendering its decision acts judicially and any matters decided are conclusive, subject only to court test in the manner provided by section 69–247, supra, and in the absence of pursuing such remedy the decision is not subject to collateral attack. Phoenix Ry. Co. of Arizona v. Lount, 21 Ariz. 289, 187 P. 933, 937. The general rule, even in the absence of such express statute, is that a judgment may not be collaterally attacked unless the absence of jurisdiction appears from the record. 31 Am.Jur., Judgments, section 602. In harmony with the statute and the general rule, unless it appears from the record made by the corporation commission that it had no jurisdiction or power to decide that the franchise issued by Prescott to Southern is valid, the only method of upsetting the judgment on this ground is by the direct proceeding provided by the statutes. In Phoenix Ry. Co. of Arizona v. Lount, supra, the corporation commission had made an order authorizing the company to abandon a part of its line which it was operating under franchise from the city of Phoenix. Suit was brought by individuals for mandamus to compel the continuation of the operation.

This court, after holding that the commission had jurisdiction and power to order abandonment of the line, said:

"Whether the Corporation Commission's decision ordering changes in the plant of appellant, and in permitting appellant to abandon the portion of the Brill line on First and Pierce streets, was correct or not, we cannot inquire into or determine in this case. The commission had jurisdiction of the subject-matter, and its decision, whether right or wrong, whether supported or unsupported by the facts, must stand until set aside upon direct appeal to the courts. The commission being authorized by the Constitution and the laws to regulate, control, and supervise public utilities of the state, and to that end being vested with the power to institute and entertain hearings and render decisions therein, its decisions must be given force and effect to the extent expressed in the statute. Neither public utilities nor other parties to proceedings before the commission may ignore the commission's decisions and proceed to invoke the powers of the court regardless thereof.

"Inasmuch as the statute (paragraph 2341) makes the final orders and decisions of the commission conclusive in all collateral actions and proceedings, it follows that the order or decision of July 11, 1916, is conclusive on *all persons, whether parties thereto or not,* except when attacked or brought into question in a direct action or proceeding. * * *" (Emphasis supplied.)

On the subject of the power of the corporation commission concerning a determination by it of the existence of a municipal franchise in favor of an applicant for a certificate of convenience and necessity, section 69–235, A.C.A.1939, reads as follows:

"Before any certificate may issue a certified copy of its articles of incorporation, if the applicant be a corporation, shall be filed in the office of the commission. Every applicant for a certificate shall submit to the commission such evidence as required by the commission to show that such applicant has received the required consent, franchise or permit of the proper county, city and county, municipal or other public authority. The commission may, after hearing, issue said certificate, or refuse to issue the same, * * *. If a public service corporation desires to exercise a right or privilege under a franchise or permit which it contemplates securing, but which has not yet been granted to it, such corporation may apply to the commission for an order preliminary to the issue of the certificate; the commission may thereupon make an order declaring that it will thereafter, upon application, under such rules, and regulations as it may prescribe, issue the desired certificate,

upon such terms and conditions as it may designate, after the corporation has obtained the contemplated franchise or permit; upon presentation to the commission of evidence that such franchise or permit has been secured by such corporation, the commission shall thereupon issue such certificate."

■ From the foregoing it is plain that an applicant must prove to the commission that he has a municipal franchise, and the commission has the power to decide whether such proof has been made. After the hearing, and pursuant to whatever proof of the Prescott franchise was submitted, the commission found that Southern "will have met the requirements of the statutes and this commission when it shall obtain and submit a municipal franchise from the city of Prescott." Thereafter, pursuant to Southern's application reciting it had complied with the preliminary order and secured the Prescott franchise, the commission entered an order granting the certificate of convenience and necessity and reciting therein it had satisfactory evidence that the Prescott franchise had been granted. If there was any question of the validity of the Prescott franchise for the reason that the recipient thereof was not at the time it made application therefor qualified to make such application, the time and place to raise and litigate such question was before the corporation commission and, in the event of dissatisfaction with the decision, a direct proceeding to the court as required by the statute. This question cannot be relitigated in this proceeding.

■ It is contended by plaintiffs that under the provisions of section 69–262, A.C.A. 1939, Southern at the time it applied for and received its certificate of convenience and necessity was not qualified to transact a public utility business in Arizona and therefore the commission had no power or jurisdiction to grant the certificate and the same is void. Plaintiffs' proposed interpretation of this section is to the effect that before a foreign corporation is qualified to do an intrastate public utility business it must first appear that it is doing an interstate business of like character in Arizona; whereas defendants offer as their interpretation that when a foreign corporation is doing an interstate business anywhere, it is qualified to do an intrastate business of like character in Arizona. The record shows affirmatively that Southern, at the time of applying for and receiving its certificate of convenience and necessity, was transacting the business of gas distribution in other states. Much of the briefs are taken up with interesting and forceful argument by both sides on this question of the proper interpretation of section 69–262, supra, but we think these are all matters which should and may have been presented to and argued before the corporation commission. Whether they were so presented and urged at the commission hearing we do not know, but we

do know that the commission necessarily decided Southern was legally qualified to do the business authorized by the certificate. Whether the commission misinterpreted the statute it is unnecessary for us to say. Suffice it to say that the commission had jurisdiction over the subject matter (whether Southern should receive from it a certificate of convenience and necessity), and in the exercise of that jurisdiction the commission had the power and authority to try the issue as to whether Southern was qualified to receive such certificate. In judging whether an applicant shall receive a certificate of convenience and necessity, the commission has the power to determine the legal qualifications of the proposed recipient, to judge and determine the legal right of the applicant to transact such a business in Arizona. If a court has the power to try an issue and make a decision thereon, such decision cannot be collaterally attacked for error of law, whether that error be one of misconstruction of a statute or other legal error. Tube City Mining & Milling Co. v. Otterson, 16 Ariz. 305, 146 P. 203, L.R.A.1916E, 303. This is especially true when the statute prescribes an exclusive remedy. Phoenix Ry. Co. of Arizona v. Lount, supra. In Tube City Mining & Milling Co. v. Otterson, supra [16 Ariz. 305, 146 P. 206], the trial court had rendered judgment foreclosing a mechanic's lien. Its judgment was collaterally attacked upon the ground that under the mechanic's lien statute prop-

erly construed no lien existed, but the court said:

"* * * If it was within its power to determine the sufficiency of the Otterson claim for lien, as tested by the statutes of Arizona, its action in determining its sufficiency involved only a construction of the statutes relating to liens of laborers—a rightful exercise by the court of its jurisdiction. If the decision on the question was wrong, its judgment could have been reversed on appeal; it cannot be successfully impeached collaterally.".

Plaintiffs cite a number of the decisions of this court to the effect that the misconstruction of a statute is jurisdictional and a judgment resulting therefrom is void. We have read them all and are compelled to admit we find considerable difficulty in harmonizing them. For illustration, in Brecht v. Hammons, 35 Ariz. 383, 278 P. 381, it was held that, when the pleading failed to show a cause of action against a bank stockholder for double liability as provided by the Arizona Constitution, the court had no jurisdiction to hear the matter. On the other hand in City of Phoenix v. Greer, 43 Ariz. 214, 29 P.2d 1062, it was held that even though the records showed no cause of action, the court having the power to enter upon the inquiry, its decision right or wrong was conclusive. In Maricopa County v. Bloomer, 52 Ariz. 28, 78 P.2d 993, it was held that where a suit to quiet title against the county result-

ed in a judgment, following issues raised in the case, quieting title, eliminating the lien and cancelling a tax more than five years past due was beyond the jurisdiction of the court, for the reason that the five-year statute of limitations concerning the collection of taxes properly construed did not warrant the judgment. It is difficult to harmonize this case with Tube City Mining & Milling Co. v. Otterson, supra, where the correct and sound rule announced is as follows:

"The test of jurisdiction is whether or not the tribunal has power to enter upon the inquiry; not whether its conclusion in the course of it is right or wrong. Foltz v. [St. Louis & S. F.] Railway Co., [8 Cir.] 60 F. 316, 8 C.C.A. 635; Board of Commissioners [of Lake County] v. Platt, [8 Cir.] 79 F. 567, 25 C.C.A. 87. In the Foltz Case the conclusion of the court was expressed in these words:

" ' "Jurisdiction of the subject-matter" is the power to deal with the general abstract question, to hear the particular facts in any case relating to this question, and to determine whether or not they are sufficient to invoke the exercise of that power. It is not confined to cases in which the particular facts constitute a good cause of action, but it includes every issue within the scope of the general power vested in the court, by the law of its organiza-

tion, to deal with the abstract question. Nor is this jurisdiction limited to making correct decisions. It empowers the court to determine every issue within the scope of its authority according to its own view of the law and the evidence, whether its decision is right or wrong, and every judgment or decision so rendered is final and conclusive upon the parties to it, unless reversed by writ of error or appeal, or impeached for fraud. * *.' "

It occurs to us that in Brecht v. Hammons, supra, the court undoubtedly had the power to deal with a cause of action for double liability of bank stockholders and interpret the constitutional provision relating thereto. It likewise occurs to us that in Maricopa County v. Bloomer, the court had the power to inquire into what was the proper interpretation of the five-year statute of limitations and a misinterpretation thereof was a legal error. In the case of McLellan v. Automobile Ins. Co. of Hartford, Conn., 80 F.2d 344, two of the judges of the federal Circuit Court of Appeals, Ninth Circuit, recognized the confusion and discord created by the decision in Brecht v. Hammons, supra. Therein Judge Denman said [80 F.2d 354]:

" * * * We would have held with an earlier Arizona decision that in that state its Constitution gave to the superior court the jurisdiction to consider and determine whether such a right of action against a stockholder of a cor-

poration existed either at common law or under the laws of Arizona, whether expressed in its Constitution or legislation. Having held that it had the jurisdiction to hear and determine this question, we would have held further that, if the superior court erred in the exercise of that jurisdiction and found that such a right existed, when it did not, the judgment based on that erroneous interpretation of the law, when it became final, was not subject to collateral attack."

In view of the apparent inconsistencies here illustrated, we adopt as the correct test of jurisdiction over the subject matter the one enunciated in Tube City Mining & Milling Co. v. Otterson, supra, and insofar as Brecht v. Hammons and Maricopa County v. Bloomer hold that where a court has the power to try a case of the kind and character of the one pending, it has no power or jurisdiction to make an erroneous legal decision thereon, they are disapproved.

We think the disharmony between these cases arose from failure to distinguish between the right of a court to misconstrue the law measuring the rights of the parties before it and the right of a court to misconstrue a statute or law from which jurisdiction or power of the court flows—a jurisdictional law. If there is a statute expressly conferring a limited jurisdiction and the court construes it in such a manner that the result was to exercise a power the statute did not authorize, the construction in such event is jurisdictional. Such was the situation in Corbin v. Rodgers, 53 Ariz. 35, 85 P.2d 59; Hislop v. Rodgers, 54 Ariz. 101, 92 P.2d 527. Therein was involved the statute depriving the court of power to enjoin the execution of a public statute by officers of the law. When such conditions existed there was no power. The court could not enlarge its power and jurisdiction by an erroneous construction of the law from whence came such jurisdiction.

Plaintiffs complain and ask reversal because Flagstaff, Winslow and Williams were permitted to intervene. Franchises were issued by intervenors to Southern for the distribution of natural gas in their respective communities under the same conditions and circumstances as those under which Prescott issued its franchise. The certificate of convenience and necessity which plaintiffs ask be declared void was issued under the same conditions as the certificates for serving intervenors. Certainly intervenors are interested in there being no declaratory judgment announced to the effect that the franchises issued by them and certificates of convenience and necessity under which they are being served are void. True, plaintiff corporation is not seeking to serve these towns in this litigation but should there be a judgment which in effect declared they are being illegally served, in future possible litigation by one seeking to render the

service these communities would be compelled to attempt a defense in the face of a declaratory judgment adverse to their interests. When a declaratory judgment is sought, everyone is entitled to be a party who has or claims any interest which will be affected by the judgment. Section 27–706, A.C.A.1939. There was no error in allowing the intervention.

Plaintiffs urge the decision of the commission is void upon the ground that it violates our public policy of controlled monopoly in the rendition of public utility services. Reliance is placed upon section 66–506 which limits the power of the corporation commission to grant certificates of convenience and necessity to motor carriers only when an existing carrier operating over the same route will not provide such service. This position is not valid. In the first place the statute does not relate to certificates for the operation of gas distribution companies. In the second place, if it were so construed the predecessor in interest of Northern had no certificate to distribute natural gas, had no franchise and was unable to obtain a franchise from Prescott for such purpose, and therefore could not receive such certificate of convenience and necessity.

It is contended that the lower court erred in dismissing plaintiffs' complaint upon the ground that plaintiffs were entitled to a declaratory judgment even though it might have been adverse to their contention. We have held that if a complaint for declaratory judgment fails to state a cause of action, it may be dismissed without the rendition of such judgment. Roberts v. Spray, 71 Ariz. 60, 223 P.2d 808. By the same token, if a person by reason of res judicata is estopped to relitigate a question, the only judgment he is entitled to is that he is so estopped.

The judgment is affirmed.

PHELPS, C. J., and STANFORD, LA PRADE and UDALL, JJ., concur