621 P.2d 906

Philip Edward LAMB, Petitioner,

v.

SUPERIOR COURT of the State of Arizona, In and For the COUNTY OF MARICOPA, and The Honorable Stephen H. Scott, and The Honorable I. Sylvan Brown, Judges thereof; and Nicholet Lamb Prussinski, real party in interest, Respondents.

No. 14874.

Supreme Court of Arizona,
In Banc.

Nov. 24, 1980.

Rehearing Denied Jan. 6, 1981.

Jack L. Phelps, Scottsdale, for petitioner.

Grant & MacPherson by Mark S. Cumming, Phoenix, for respondent real party in interest.

STRUCKMEYER, Chief Justice.

This is an original application by Philip E. Lamb, alleging that Respondent Judge I. Sylvan Brown acted in excess of his jurisdiction in entering a minute entry order on December 5, 1979 finding Lamb in arrears in child support, and, further, that Respondent Judge Stephen H. Scott acted without jurisdiction in refusing to quash a writ of garnishment and a subpoena duces tecum for a debtor's examination based on Judge Brown's December 5th minute entry order. This Court stayed all proceedings in the lower court pending determination of the matter. Petitioner's prayer for relief granted.

Lamb and Respondent Nicholet Lamb Prussinski were divorced in April, 1973. The divorce decree awarded Mrs. Prussinski the custody of the parties' three children, two of whom (David and Delinda) are her natural children and the petitioner's adopted children. The other (Diana) is the natural child of both parties. The decree ordered petitioner to pay child support for each child. On October 3, 1974, the decree was modified by a written order granting custody of Diana to Lamb. His support obligation was correspondingly reduced. By another written order entered on April 28, 1975, Lamb was awarded the custody of David and Delinda and his obligation to pay child support was wholly terminated. No appeals were taken from these orders.

In May, 1978, Mrs. Prussinski filed a petition requesting that the custody of David and Delinda be returned to her. On June 5, 1978, Respondent Judge Brown ordered the custody of these two children changed, and further ordered Lamb to pay child support for each child, but only while the children were "primarily in fact residing with" Mrs. Prussinski. On September 11, 1978, Mrs. Prussinski petitioned the court for an order to show cause why petitioner should not be found in contempt for failing to pay child support. Her position was that Lamb was in arrears in support for the period from October, 1974 to April, 1975, and from the period following the June 5, 1978 order reinvesting her with David and Delinda's custody. In her petition, Mrs. Prussinski also alleged that the April 28, 1975 order granting Lamb custody of his adopted children was gained through "a fraud and a subterfuge on the Court, calculated to diminish and extinguish the father's obligation of child support", and that Lamb "should be required to pay support for the period between April, 1975 and April, 1978 * * *". The matter was submitted to Judge Brown on stipulated facts and memoranda.

### THE DECEMBER 5TH MINUTE ENTRY ORDER

In a minute entry dated December 5, 1979, Judge Brown found Lamb in arrears in child support in the amount of $5,150.00 and ordered judgment in that amount in favor of Mrs. Prussinski. The minute entry recited:

"THE COURT FINDS that the change of custody of the two adopted children

\* \* \* was not for the purpose of [Lamb] actually taking custody of said minor children and providing for their support and therefore did not aggrevate [sic] his obligation to support said children; that [Mrs. Prussinski] however is only entitled to receive said support during the times that the children were in fact primarily residing with her during which periods she should have been receiving support."

No formal written judgment or order incorporating this minute entry was entered. Lamb requests relief from the minute entry, contending that Judge Brown lacked legal authority to enter an order for judgment in the amount he fixed as arrearages.

■■■ While child support orders can be modified, and Judge Brown had the jurisdiction to do this, the modification cannot be made retroactive. A.R.S. § 25–327(A) provides:

"Except as otherwise provided in subsection F of § 25–317, the provisions of any decree respecting maintenance or support may be modified only as to installments accruing subsequent to the motion for modification \* \* \*".

Plainly, the statute recognizes the nature and effect of a judgment for child support and that subsequent orders might purport to modify it. In the absence of a valid judgment, decree or order requiring one spouse to pay a fixed sum to the other spouse for child support, no such duty exists,[1] for it is the valid judgment, decree or order that creates the duty and governs its extent.

In *Adair v. Superior Court*, 44 Ariz. 139, 33 P.2d 995 (1934), this Court said:

"The original decree determined the status of the parties and fixed the duties and obligations of each to the other at the time it was entered, and these remained as therein fixed until modified in accordance with the provisions of section 2188 [a predecessor of A.R.S. § 25–327(A)]." *Id.* at 142, 33 P.2d 995.

In *Adair*, the trial court originally ordered the father to pay $25.00 monthly child support. After the mother petitioned for modification, this amount was increased to $35.00 a month. The court, however, also ordered the father to pay an additional sum above the previous $25.00 to cover some expenditures by the mother for their child, which were made before she petitioned for the increase. When the father refused to pay for these expenditures, he was found in contempt. This Court set aside the finding of contempt, holding that the order which he had disobeyed had no lawful basis. We said:

"\* \* \* To hold that the court could compel the payment of a greater amount than the decree had imposed, namely, a sum in addition to the $25 per month, would be equivalent to saying that the decree, as it stood, when the $60 was spent by the mother, was no more final and conclusive for the period it had been executed than for the future; in other words, that it might be set aside after it had been performed, and in consequence its finality, conclusiveness and solemnity completely destroyed. The broad power conferred by the expression in 2188 \* \* \* has reference entirely to the future and confers upon the court no power whatever to change what has already been done.

\* \* \* The rights and liabilities of the parties in such instances become irrevocably fixed on the dates the decree provides they shall be paid \* \* \*." *Id.* at 142–143, 33 P.2d 995.

■■■ Since the duty to pay support does not exist unless a judgment, decree or order creates it, it follows that no duty exists if a valid order terminates the obligation. This is illustrated by *Badertscher v. Badertscher*, 10 Ariz.App. 501, 460 P.2d 37 (1969). Initially the trial court granted custody to the mother and ordered the father to pay child support. After a year, the father obtained

---

1. A.R.S. § 12–2451 imposes a general duty on parents to support their children, but there is no duty on one parent to pay a certain sum *to the other parent* for child support. *See Watkins v. Medical and Dental Finance Bureau, Inc.*, 101 Ariz. 580, 422 P.2d 696 (1967); *Moreno v. Superior Court*, 3 Ariz.App. 361, 414 P.2d 749 (1966) (whether there is a valid marriage between father and mother is immaterial to the father's duty to support his child).

an ex parte order awarding him custody and terminating his duty to pay child support. One month later, the mother petitioned to have the ex parte order set aside, which the court did. At the same time, the court ordered the father to pay support for the period between the entry of the ex parte order and the filing of the petition to set it aside. Noting *Adair v. Superior Court,* supra, the Court of Appeals found this latter order to be without authority since the order was attempting to retroactively impose a duty on the father to pay support for a period that a valid order had terminated his duty.[2]

Mrs. Prussinski argues that her petition for an order to show cause was an independent action in equity to relieve her of the April, 1975 order, and that Respondent Judge Brown's minute entry order of December 5, 1979 "voided" the April, 1975 order "as if it never existed"; thus, leaving the original decree, which imposed a duty of support on petitioner, in effect. But we do not think her petition was an independent action for relief.[3]

■ More importantly, however, her argument misconceives the law of judgments. Void judgments lack legal effect,[4] but a judgment or order procured through fraud is not a void judgment. Such a judgment or order is still an effective and valid judgment or order unless and until it is set aside under Rule 60(c), Ariz.R.Civ.Proc., or

its enforcement enjoined in an independent action. 7 Moore's Federal Practice (2nd edition), ¶ 60.25[2], p. 296; Restatement of Judgments § 4, comment a (1942). Since a valid order terminated Lamb's obligation to pay Mrs. Prussinski child support from April, 1975 to May, 1978, Respondent Judge Brown lacked jurisdiction to hold petitioner in arrears for that period.

■ Mrs. Prussinski argues that Lamb consented to the court's determining arrearages for this period. However, the rule is well established that parties cannot confer subject matter jurisdiction on a court by consent. *Porter v. Porter,* 101 Ariz. 131, 137, 416 P.2d 564 (1966). Since we cannot determine from Judge Brown's minute entry if he found Lamb in arrears for the periods before April, 1975 and after May, 1978, we direct that the entire minute entry be vacated.

### WRIT OF GARNISHMENT AND DEBTOR'S EXAMINATION

■ Lamb also contends that the Superior Court was without jurisdiction to entertain a writ of garnishment and a subpoena duces tecum commanding him to appear at a debtor's examination. Both the garnishment and the subpoena were based on Judge Brown's minute entry of December 5, 1979. He argues, and we agree, that a writ of garnishment and an order for a debtor's examination may not be based on an order in a minute entry.

**2.** The Superior Court has "no power whatever to change what has already been done." *Adair v. Superior Court,* supra. Where a court attempts to enter a judgment which it has no power to make, it is commonly referred to as in excess of jurisdiction. See *Caruso v. Superior Court,* 100 Ariz. 167, 412 P.2d 463 (1966), where it was held: "To decide whether a lower tribunal has acted in excess of its jurisdiction, we examine the internal validity of the proceeding. Acts in excess of jurisdiction include acts exceeding the power of the court as defined by constitution, statute or court rules followed under the doctrine of stare decisis, *Abelleira v. District Court,* 17 Cal.2d 280, 109 P.2d 942, 132 A.L.R. 715 approved in *Duncan v. Truman,* 74 Ariz. 328, 248 P.2d 879 * * *." *Id.* at 171, 412 P.2d 463.

**3.** Respondent Judge Brown, in his minute entry, never declared the April, 1975 order "void"

or even stated that he was granting Mrs. Prussinski relief from the effect of that order. It also should be stressed that there is absolutely no evidence in the record to support the allegations of fraud in Mrs. Prussinski's order to show cause, except that the children never lived with Lamb after the April, 1975 order. As pointed out infra, however, the order, even if procured by fraud, would have effectively eliminated Lamb's duty to pay support until the order was properly set aside.

**4.** Judgments which are rendered by a court lacking subject matter or personal jurisdiction are void. *Cockerham v. Zikratch,* 127 Ariz. 230, 619 P.2d 739 (1980). Similarly, judgments which are not authorized by law, rendered in excess of jurisdiction, are also void. See *Caruso v. Superior Court,* footnote 2, supra.

By A.R.S. § 12–1571(A)(2), an order is sufficient to support a garnishment, and by A.R.S. § 12–1631(A), an order is sufficient to support a subpoena for a debtor's examination. But until the order is in writing, signed by the court and entered by the clerk of the court, it is not effective. *Jackson v. Sears, Roebuck and Co.*, 83 Ariz. 20, 23, 315 P.2d 871 (1957); Rules 54(a) and 58(a), Ariz.R.Civ.Proc. A minute entry, even though incorporating an order, lacks the legal effect of a formal judgment, decree or order, since it is not signed by the court. *See Cole v. Cole*, 101 Ariz. 382, 420 P.2d 167 (1966). While it is true that execution may issue for the collection of past due child support without the custodial parent obtaining a new judgment for the amount of the past due installments, *Sanchez v. Carruth*, 116 Ariz. 180, 568 P.2d 1078 (App.1977); see A.R.S. § 12–2455, there still must be a prior judgment, decree or order signed by the judge and entered by the clerk which creates a duty on one spouse to pay child support to the other. Here, the order on which the garnishment and subpoena duces tecum were based was the minute entry of December 5, 1979. Since there has been no formal order entered, the writ of garnishment and the subpoena duces tecum should not have issued and Judge Scott was without jurisdiction to entertain them.

It is ordered that the order contained in the minute entry of December 5, 1979 be vacated, and petitioner's motion to quash the writ of garnishment and the subpoena duces tecum be granted. Further ordered that the stay of this Court heretofore issued be vacated.

HOLOHAN, V. C. J., and HAYS, J., concur.

GORDON, Justice (specially concurring):

While I agree with the result reached by the majority in this case, I must respectfully dissent from the rationale of lack of jurisdiction on which they base their decision.

The majority opinion holds that Judge Brown "lacked jurisdiction" to enter a minute entry holding Lamb in arrears in child support contrary to statute and that Judge Scott "was without jurisdiction" to deny defendant's motions to quash a writ of garnishment and a debtor's examination based on Judge Brown's minute entry order. The opinion infers that it is subject matter jurisdiction which was lacking in the court below.

Subject matter jurisdiction is generally defined as the power to hear and determine cases of the general class to which the particular proceedings belong. *First National Bank & Trust Co. v. Pomona Mach. Co.*, 107 Ariz. 286, 486 P.2d 184 (1971); *Arizona Public Service Co. v. Southern Union Gas Co.*, 76 Ariz. 373, 265 P.2d 435 (1954); *Tube City Mining & Milling Co. v. Otterson*, 16 Ariz. 305, 146 P. 203 (1914). It is defined in the Restatement (Second) of Judgments as "authority to adjudicate the type of controversy involved in the action." Restatement (Second) of Judgments § 14 (Tent. Draft No. 5, 1978).

Jurisdiction over the subject matter of this case was conferred upon the superior court by Article 6, § 14, of the Arizona State Constitution, and A.R.S. § 12–123. The superior court exercised its jurisdiction from sometime before April 17, 1973, when the original decree of divorce was entered, through the orders complained of here. The majority opinion implies, however, that each of these orders, because erroneous, extinguished the superior court's subject matter jurisdiction in this matter. I believe such a proposition to be contrary to the weight of authority.

The existence of subject matter jurisdiction does not depend on the correctness of a court's decision. *Arizona Public Service, supra*; *State v. Phelps*, 67 Ariz. 215, 193 P.2d 921 (1948); *accord, Standard Accident Ins. Co. v. Indus. Comm'n.*, 39 Ill.2d 172, 233 N.E.2d 543 (1968); *Taber v. Taber*, 213 Kan. 453, 516 P.2d 987 (1973); *State ex rel. Green v. Kimberlin*, 517 S.W.2d 124 (Mo. 1974). We have said that " '[t]he power to determine and decide a case includes the power to decide it wrong as well as to decide it right.' " *Tube City, supra*, 16 Ariz.

at 313, 146 P. at 206. The test of jurisdiction is whether or not the tribunal has power to enter upon the inquiry, not whether its conclusion in the course of it is right or wrong. *Arizona Public Service, supra* ; *Phelps, supra* ; *City of Phoenix v. Greer*, 43 Ariz. 214, 29 P.2d 1062 (1934); *Tube City, supra*. Therefore, although I agree with the majority that both orders challenged here were erroneous, I fail to see how the issuance of those erroneous orders deprived the superior court of its jurisdiction over this matter.

While I feel that the orders discussed in the majority opinion were within the jurisdiction of the trial court, I feel they amount to abuse of discretion in both instances and rest my concurrence on that ground.

CAMERON, Justice (concurring):

I concur with Justice Gordon.